PHILLIP A. TALBERT
United States Attorney
KATHERINE T. LYDON
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

**FILED**

**Mar 23, 2023**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

**SEALED**

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. **2:23-cr-0080 JAM** |
| Plaintiff, | 18 U.S.C. § 371 – Conspiracy; 18 U.S.C. § 545 – Smuggling; 16 U.S.C. §§ 1538(a)(1)(A), 1538(g) – Endangered Species Act – Unlawful Importation; 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(2)(B), 28 U.S.C. § 2461(c) – Criminal Forfeiture |
| v. | |
| PIR DANISH ALI and JASON KEITH BRUCE, | |
| Defendants. | |

I N D I C T M E N T

<u>COUNT ONE</u>: [18 U.S.C. § 371 – Conspiracy]

The Grand Jury charges:

PIR DANISH ALI and JASON KEITH BRUCE,

defendants herein, as follows:

### I.      **BACKGROUND**

At all times relevant to the Indictment:

<u>Legal Background</u>

1.      The Convention on International Trade in Endangered Species of Wild Fauna and Flora (CITES) was an international agreement among governments, including the United States and the Islamic Republic of Pakistan (hereinafter, "Pakistan"). The purposes of CITES was to ensure that

1  international trade in specimens of wild animals and plants did not threaten their survival.

2      2.      Each animal and plant species covered by CITES was listed on one of three appendices

3  according to the degree of protection afforded to that species.

4      3.      Appendix I of CITES included the most protected species of animals and plants and

5  required the most stringent trade restrictions as to those species.

6      4.      The Ladakh urial or shapo (Ovis vignei) (hereinafter, "Ladakh urial") was a species of

7  wild sheep that is classified under CITES as an Appendix I species.  Ladakh urial lived only in the

8  mountains of Ladakh, a region of India and Pakistan.

9      5.      CITES and implementing regulations generally prohibited the importation of species

10  listed in Appendix I without both a valid CITES import permit from the country into which the species

11  was being imported and a valid CITES export permit or certificate of re-exportation from the country

12  from which the species was being exported.

13      6.      The Endangered Species Act and implementing regulations prohibited trade in any

14  specimens contrary to the provisions of CITES.

15      7.      The Ladakh urial also was listed on the U.S. Endangered Species list as endangered. The

16  Endangered Species Act and implementing regulations prohibited the import of any such endangered

17  species, including the Ladakh urial, unless authorized under a permit issued pursuant to the Endangered

18  Species Act.

19      8.      The Lacey Act and implementing regulations prohibited: (1) the making or submitting of

20  any false label or record for wildlife that was intended for import into the United States; and (2)

21  knowingly importing or transporting any wildlife taken, possessed, transported, or sold in violation of

22  foreign wildlife law or U.S. wildlife law, including the Endangered Species Act.

23      9.      "Trophy" means a whole animal, or a readily recognizable part or derivative of an

24  animal, that is raw, processed, or manufactured.

25      Defendants

26      10.      PIR Danish Ali was a resident of Pakistan and a dual citizen of Pakistan and the United

27  Kingdom.

28      11.      PIR was the CEO of SAFARI COMPANY 1, a hunting outfitter and guide company

INDICTMENT

2

1  based in Pakistan. PIR catered to international big game hunters, including those based in the United

2  States.

3      12.    Jason Keith BRUCE was a resident of Galt, California, which is within the state and

4  Eastern District of California. BRUCE was a recreational big game hunter, who regularly traveled

5  abroad to hunt.

6      13.    BRUCE hunted as a client of SAFARI COMPANY 1. BRUCE also referred other clients

7  to PIR and PIR offered BRUCE discount hunts. At one point they discussed forming a joint venture,

8  which BRUCE jokingly suggested they call the "Outlaw Hunting Agency."

9  ## II.    THE CONSPIRACY

10      14.    Beginning at least on or about February 4, 2016, and continuing through on or about

11  January 31, 2020, in the State and Eastern District of California and elsewhere, defendants JASON

12  KEITH BRUCE and PIR DANISH ALI knowingly and intentionally conspired with each other and with

13  other persons known and unknown to the grand jury to defraud the United States and an agency thereof,

14  to wit the United States Fish and Wildlife Service, and to commit offenses against the United States, to

15  wit:

16      a.    Smuggling, in violation of Title 18, United States Code, Section 545;

17      b.    Endangered Species Act – Unlawful Importation, in violation of 16 United States
    Code, Section 1538(a)(1)(A); and

18

19      c.    False Statements, in violation of Title 18, United States Code, Section 1001.

20  ## III.    MANNER AND MEANS OF THE CONSPIRACY

21      In furtherance of the conspiracy, BRUCE and PIR employed, among others, the following

22  manner and means:

23      15.    Beginning no later than February 4, 2016, BRUCE and PIR discussed the possibility of

24  arranging a Ladakh urial hunt in Pakistan. They ultimately agreed that the export of the resulting trophy

25  would be achieved through bribery and fraud.

26      16.    BRUCE told PIR he himself was interested in hunting a Ladakh urial and provided the

27  names of two other hunters who he claimed were willing to pay $80,000 and $100,000, respectively, to

28  hunt a Ladakh urial.

INDICTMENT

17.    In or about October of 2016, PIR told BRUCE that PIR had engaged in discussions with the game authorities in Pakistan about a hunt.  PIR conveyed that game authorities had made clear that no Ladakh urial trophy could be legally exported from Pakistan – rather, the game authorities would keep the trophy of the rare species for scientific research.

18.    On multiple occasions in October, November and December of 2016, PIR stated to BRUCE that the game department in Pakistan had set a condition that if a Ladakh urial were successfully killed on the hunt, the game department would keep the skin and horns for scientific research purposes.  PIR followed that information up by noting "Maybe after some time I can bribe someone to steal it from their store but cannot promise that."  On another occasion, PIR repeated the condition set by the game department and noted, "At a later date [w]e will try and bribe them into handing it to us and we can give them a Blandford or something in return.  But I cannot promise that now."  BRUCE responded, "OK I'm in.  I just really want to bring it home."

19.    In December 2016, PIR told BRUCE that a recent survey of Ladakh urial showed a population of only approximately 180 animals.

20.    In response to hearing from PIR that no export permission for the Ladakh urial trophy could be obtained, BRUCE said he would claim to U.S. authorities that the trophy was instead a different species, a Punjab urial: "If we shoot ladak I'll bring it home as Punjab."[1]

21.    PIR advised the final price would be $50,000 for BRUCE and $60,000 for another American hunter attending the Ladakh urial hunt.  PIR also requested at least $10,000 to give him "the flexibility to pay some bribes if need be when I leave for gilgit," the Ladakh hunting area.

22.    Leading up to the hunt, which was set for in or about April/May 2017, BRUCE and PIR agreed that BRUCE would smuggle rifle barrels out of the United States to Pakistan in his baggage.

23.    On or about April 13, 2017, BRUCE flew to Pakistan for the hunt.

24.    BRUCE posted photos to his Facebook page and PIR posted photos to the SAFARI COMPANY 1 website depicting BRUCE posing with a dead animal identified as a Ladakh urial.

25.    After the 2017 hunt, BRUCE flew back to the United States without the Ladakh urial

---

[1] This Indictment quotes the messages between Pir and Bruce as originally written, including typographical errors and misspellings.

1  trophy.

2      26.    BRUCE and PIR arranged another Pakistan hunting trip, to take place in 2018, which

3  would serve as cover for BRUCE to take home the Ladakh urial trophy.  BRUCE agreed to pay PIR

4  $35,000 for the 2018 hunt.

5      27.    PIR and BRUCE agreed that BRUCE would purchase ammunition in the United States,

6  conceal it from United States authorities and the airlines, and get the ammunition through customs in

7  Pakistan using a fake document, which PIR created and disclosed as fake to BRUCE.

8      28.    BRUCE traveled to Pakistan on or about March 24, 2018.

9      29.    On or about March 29, 2018, BRUCE flew into San Francisco International Airport

10  carrying eight trophies in his personal baggage, including the Ladakh urial trophy.  U.S. Customs and

11  Border Protection stopped him and alerted the U.S. Fish and Wildlife Service.

12      30.    BRUCE presented Customs and Border Protection and the U.S. Fish and Wildlife Service

13  with what purported to be an Office Memorandum, purporting to be issued by the Ministry of Climate

14  Change in Pakistan, purporting to authorize the export of BRUCE's trophies.  In truth and in fact, the

15  Office Memorandum was a fake document.  The signature on it was forged.

16      31.    The fake Office Memorandum presented by BRUCE to Customs and Border Protection

17  and the U.S. Fish and Wildlife Service did not declare the Ladakh urial trophy he carried.  Instead, it

18  listed two Punjab urials and two Blandford urials, among other species.

19      32.    The U.S. Fish and Wildlife Services detained the trophies for several months.  BRUCE

20  repeatedly expressed interest in having the trophies returned to him.  While continuing to investigate the

21  fraudulent Pakistani export documents, but still under the impression that BRUCE had honestly listed

22  the species of his trophies, the U.S. Fish and Wildlife Service issued BRUCE a citation for importing

23  CITES-listed species without proper CITES export authorization from Pakistan.  Shortly after BRUCE

24  paid the citation, the U.S. Fish and Wildlife Service returned the trophies to BRUCE and BRUCE took

25  the trophies to his residence in GALT.

26      33.    Investigation revealed that numerous other documents presented by hunters who had

27  hunted with SAFARI COMPANY 1 to import trophies into the United States were also forged.  The

28  U.S. Fish and Wildlife Service has identified at least 97 trophies brought into the United States pursuant

INDICTMENT

5

1  to fraudulent documents by at least 25 different hunters who all hunted with SAFARI COMPANY 1

2  between 2013 and 2018.

3      34.    After the detention of the trophies, PIR and BRUCE agreed with one another to lie to the

4  U.S. Fish and Wildlife Service, and did in fact lie to the U.S. Fish and Wildlife Service.

5      35.    Ultimately, after repeatedly telling the U.S. Fish and Wildlife Service that he did not

6  bring the Ladakh urial home to the United States, Bruce admitted he did bring the Ladakh urial home

7  and delivered the trophy to a U.S. Fish and Wildlife Service office.

8                    **IV.    OVERT ACTS**

9      In furtherance of the conspiracy and to accomplish its objects, defendants PIR and BRUCE,

10  together with others known and unknown to the grand jury, committed and willfully caused others to

11  commit the following overt acts, among others, in the State and Eastern District of California and

12  elsewhere:

13      36.    On or about March 29, 2018, BRUCE carried the Ladakh urial trophy into the United

14  States in his personal baggage and filled out a FWS Declaration Form 3-177 which failed to declare it

15  truthfully as a Ladakh urial.

16      37.    On or about March 30, 2018, via Facebook message, BRUCE expressed concern that the

17  U.S. Fish and Wildlife Service would question the number of trophies BRUCE imported after such a

18  short hunt.  PIR responded "Fuck" followed by "We should have thought of that" and advised BRUCE

19  to tell them he did shoot all of those animals because he was shooting into a herd.

20      38.    On or about April 27, 2018, BRUCE asked PIR to arrange for a call to be made to the

21  U.S. Fish and Wildlife special agent who was looking into the paperwork, asking: "cant you have

22  someone from the game department call him" followed by, "just have someone fake call him."  PIR

23  responded, "Yes I can certainly do that."

24      39.    On or about May 10, 2018, BRUCE advised PIR via Facebook that the U.S. Fish and

25  Wildlife Service had sent the paperwork to Washington D.C. for verification.  PIR expressed concern

26  that if a certain person in Pakistan "gets a smell of this he will complain to usfws to dna testing on

27  Ladakh."  PIR continued, "And we will get fucked."  Several messages later, BRUCE told PIR, "dude

28  delete all messages emails and whatsapps we have sent each other" and stated he was "deleting all

1  pakistan picks off fb and my phone."

2      40.    On or about May 26, 2018, PIR told BRUCE via Facebook in sum and substance that he

3  had made a counterfeit Ladakh trophy and given it to the local government so it would appear that the

4  trophy had not been exported, and induced the local government to write a letter to that effect.  PIR sent

5  BRUCE a photo of a shoulder mounted urial trophy labeled as a Ladakh urial.

6      41.    On or about January 28, 2020, during the execution of a search warrant on BRUCE's

7  residence, U.S. Fish and Wildlife Service agents interviewed BRUCE.  BRUCE repeatedly told agents

8  he had not brought the Ladakh urial he shot home.

9      All in violation of Title 18, United States Code, Section 371.

10  COUNT TWO: [18 U.S.C. § 545 – Smuggling]

11      The Grand Jury further charges: T H A T

12                   JASON KEITH BRUCE,

13  defendant herein, beginning on or about March 29, 2018 to on or about August 27, 2018, in the State

14  and Eastern District of California, attempted to and did fraudulently and knowingly import and bring

15  into the United States merchandise, to wit, the remains of a dead Ladakh urial, contrary to law in that

16  said merchandise was imported in violation of the Endangered Species Act and implementing

17  regulations (Title 16, United States Code, Sections 1538(a)(1)(A) and 1538(g) and Title 50, Code of

18  Federal Regulations, Sections 17.11 and 17.21(a),(b)) and the Lacey Act (Title 16, United States Code,

19  Sections 3372(d)(1) and 3373(d)(3)), and did knowingly conceal and facilitate the transportation and

20  concealment of such merchandise after importation knowing the same to have been imported and

21  brought into the United States contrary to law, all in violation of Title 18, United States Code, Section

22  545.

23  COUNT THREE: [16 U.S.C. §§ 1538(a)(1)(A) and 1538(g) – Endangered Species Act – Unlawful
24  Importation]

25      The Grand Jury further charges: T H A T

26                   JASON KEITH BRUCE,

27  defendant herein, on or about March 29, 2018, in the State and Eastern District of California, and

28  elsewhere, attempted to and did knowingly and without authorization import into the United States an

1  endangered species of wildlife, that is, the remains of a dead Ladakh urial, all in violation of Title 16,

2  United States Code, Sections 1538(a)(1)(A) and 1538(g), and Title 50, Code of Federal Regulations,

3  Sections 17.11 and 17.21(a),(b).

4  <u>FORFEITURE ALLEGATION</u>: [18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(B) and 28 U.S.C. § 2461(c) -

5  Criminal Forfeiture]

6      1.      Upon conviction of one or more of the offenses alleged in Counts One through Three of

7  this Indictment, defendants PIR DANISH ALI and JASON KEITH BRUCE shall forfeit to the United

8  States pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(B) and 28 U.S.C. § 2461(c), the following

9  property:

10          a.      Any real or personal property, which constitutes or is derived from any proceeds

11  obtained, directly or indirectly, as a result of such offense; and any property used, or intended to be used,

12  in any manner or part, to commit, or to facilitate the commission of the offense.

13          b.      A sum of money equal to the total amount of proceeds obtained as a result of the

14  offense for which defendant is convicted.

15      2.      If any property subject to forfeiture as a result of the offense alleged in this Indictment,

16  for which defendant is convicted:

17          a.      cannot be located upon the exercise of due diligence;

18          b.      has been transferred or sold to, or deposited with, a third party;

19          c.      has been placed beyond the jurisdiction of the court;

20          d.      has been substantially diminished in value; or

21          e.      has been commingled with other property which cannot be divided without

22              difficulty;

23

24

25

26

27

28

1 | it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other

2 | property of said defendant, up to the value of the property subject to forfeiture.

A TRUE BILL.

/s/ Signature on file w/AUSA

FOREPERSON

PHILLIP A. TALBERT
United States Attorney

*No.* 2:23-cv-0080 JAM

---

## UNITED STATES DISTRICT COURT

*Eastern District of California*

*Criminal Division*

### THE UNITED STATES OF AMERICA
*vs.*

PIR DANISH ALI and
JASON KEITH BRUCE

---

### I N D I C T M E N T

**VIOLATION(S):**
18 U.S.C. § 371 – Conspiracy;
18 U.S.C. § 545 – Smuggling;
16 U.S.C. §§ 1538(a)(1)(A), 1538(g)  – Endangered Species Act;
18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(B) and 28 U.S.C. § 2461(c) – Criminal Forfeiture

---

*A true bill,*

**/s/ Signature on file w/AUSA**

------------------------------------------
*Foreman.*

*Filed in open court this* ___23rd___ *day*

*of* ___March___ *, A.D. 20* _23_

/s/ Shelly Her
------------------------------------------
*Clerk.*

---

*Bail, $* No bail bench warrants for both defendants.

March 23, 2023

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

**United States v.  PIR Danish Ali and Jason Keith BRUCE**
**Penalties for Indictment**

**Defendants**
PIR Danish Ali
Jason BRUCE

**COUNT 1:**          **BOTH DEFENDANTS**

VIOLATION:          18 U.S.C. § 371 – Conspiracy

PENALTIES:          Term of imprisonment of up to 5 years
                    Fine of up to $250,000; or both fine and imprisonment
                    Supervised release of up to 3 years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**COUNT 2:**          **Jason Keith BRUCE**

VIOLATION:          18 U.S.C. § 545 – Smuggling goods into the United States

PENALTIES:          Term of imprisonment of up to 20 years
                    Fine of up to $250,000; or both fine and imprisonment
                    Supervised release of up to 3 years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**COUNT 3:**          **Jason Keith BRUCE**

VIOLATION:          16 U.S.C. §§ 1538(a)(1)(A) AND 1538(g) – Endangered Species Act

PENALTIES:          Term of imprisonment of up to 1 year
                    Fine of up to $50,000; or both fine and imprisonment
                    Supervised release of up to 3 years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**FORFEITURE ALLEGATION:**   **BOTH DEFENDANTS**

VIOLATION:          18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(2)(B), 28 U.S.C. § 2461(c)

PENALTIES:          As stated in the charging document